**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| LUKE and DANA BROWN, Plaintiffs, | : | |
| vs. | : | Civil Action No. 26-cv-1148 |
| ALIMENTATION COUCHE-TARD and GIANT EAGLE, INC., Defendants. | : | PLEADING: **MOTION FOR LEAVE TO FILE SUPPLEMENTAL COMPLAINT** |
| | : | FILED ON BEHALF OF: LUKE and DANA BROWN |
| | : | COUNSEL OF RECORD: |

Tim Fitchett, Esq.
Erin Brind'Amour, Esq.
FAIR SHAKE ENVIRONMENTAL LEGAL SERVICES
6425 Living Place, Suite 200
Pittsburgh, PA 15206
412-664-5546
tfitchett@fairshake-els.org
ebrindamour@fairshake-els.org

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| LUKE and DANA BROWN, | : | |
| Plaintiffs, | : | |
| vs. | : | |
| | : | Civil Action No. 26-cv-1148 |
| ALIMENTATION COUCHE-TARD | : | |
| and GIANT EAGLE, INC., | : | |
| Defendants. | | |

**PLAINTIFFS' MOTION FOR LEAVE TO FILE SUPPLEMENTAL PLEADING UNDER FEDERAL RULE OF CIVIL PROCEDURE 15(d)**

Plaintiffs Luke and Dana Brown respectfully move for leave under Federal Rule of Civil Procedure 15(d) to file the proposed Supplemental Complaint attached as Exhibit A. The proposed Supplemental Complaint sets out sewage-discharge events that occurred after Plaintiffs filed their operative First Amended Complaint on June 9, 2026. In support, Plaintiffs state as follows:

## INTRODUCTION

1. Plaintiffs filed their original Complaint in the Court of Common Pleas of Butler County on April 14, 2026, asserting claims for private nuisance, water trespass, negligence, and for violations of the federal Clean Water Act, Pennsylvania Clean Streams Law, Pennsylvania Stormwater Management Act and Franklin Township municipal law.

2. On June 2, 2026, this action was removed by the Defendants to its present forum and venue in Federal District Court for the Western District of Pennsylvania, based on 28 U.S.C. §1331.

3. Plaintiffs amended their complaint on June 19, 2026.

4. Plaintiffs seek leave to supplement their operative pleading with allegations concerning sewage discharges from the on-site sewage disposal system at the GetGo facility located at 663 New Castle Road, Butler, Pennsylvania 16001 (the "Facility").

5. The proposed supplemental allegations concern transactions, occurrences, and events beginning on or about June 24, 2026, after the filing of the operative pleading.

6. The proposed Supplemental Complaint concerns the same Facility, the same alleged drainage pathways, the same parties, and the same general course of alleged pollutant discharges at issue in this action.

7. The proposed supplementation will permit the Court to address the parties' related dispute in one action and will avoid unnecessary, duplicative litigation.

## FACTUAL BACKGROUND

8. Plaintiffs Luke Brown and Dana Brown reside at 112 Eagle Mill Road, Butler, Pennsylvania 16001, immediately adjacent to the Facility.

9. Defendant Alimentation Couche-Tard ("ACT") acquired the GetGo stations, including the Facility, in June 2025 and currently owns and operates the Facility.

10. Defendant Giant Eagle, Inc. allegedly purchased the Facility site, constructed the Facility, and operated it until transferring ownership to ACT in or around June 2025.

11. Beginning on or about June 24, 2026, the Facility's on-site sewage-disposal system allegedly discharged sewage effluent into the Facility's stormwater rain garden after an inspection pipe on the sand mound became disconnected from the lateral pipe.

12. Plaintiffs allege that the sewage mixed with stormwater in the rain garden and flowed through a culvert system beneath Eagle Mill Road and onto their property.

13. Plaintiffs documented alleged sewage-discharge events, odors, attempted repairs, and continuing conditions from June 24 through at least August 5, 2026.

14. Plaintiffs allege that the discharges exposed their property to sewage effluent, produced persistent sewage odors, and interfered with their use and enjoyment of portions of their property.

## LEGAL STANDARD

15. Rule 15(d) permits a court, on motion and reasonable notice, to allow a party to serve a supplemental pleading setting out a transaction, occurrence, or event that happened after the date of the pleading to be supplemented.

16. A supplemental pleading under Rule 15(d) concerns events that occurred after the pleading sought to be supplemented was filed, unlike an amendment addressing earlier matters omitted from the original pleading. *Owens-Illinois, Inc. v. Lake Shore Land Co.*, 610 F.2d 1185, 1188 (1979).

17. In the Third Circuit, the standard governing supplementation under Rule 15(d) is essentially the same as the standard governing amendment under Rule 15(a). *Green v. Nish*, 2012 U.S. Dist. LEXIS 163436, 8 (2012).

18. Leave to supplement should be freely permitted where the supplemental facts are connected to the original pleading and the supplementation does not cause undue delay, bad faith, dilatory tactics, undue prejudice, or futility. *Clearly Clean Prods., LLC v. Tekni-Plex, Inc.*, 2026 U.S. Dist. LEXIS 52545, 8 (2026).

19. Rule 15(d) is intended to promote a complete adjudication of the dispute between the parties and to avoid unnecessary multiplicity of litigation. *CMR D.N. Corp. v. City of Phila.*, 2011 U.S. Dist. LEXIS 25387, 11 (2011).

## ARGUMENT

### A. The Proposed Supplemental Complaint Properly Alleges Events Occurring After the Operative Pleading.

20. The proposed Supplemental Complaint alleges events occurring on and after June 24, 2026, including the alleged failure of the Facility's sewage-disposal system, recurring discharges of sewage effluent to the rain garden, commingling of sewage and stormwater, liquid flows toward Plaintiffs' property, notice to Defendants, and repair efforts.

21. These events occurred after June 19, 2026, the filing date of the operative pleading Plaintiffs seek to supplement.

22. Rule 15(d) specifically permits a supplemental pleading setting out transactions, occurrences, or events that happened after the pleading to be supplemented. *Dance v. Pennsylvania*, 2019 U.S. Dist. LEXIS 206988, 4 (2019).

23. The proposed allegations concern the Facility, parties, alleged discharges, and alleged harms that are directly connected to the claims and factual allegations already presented in this action.

24. The proposed Supplemental Complaint therefore falls within the purpose and scope of Rule 15(d). *CMR D.N. Corp. v. City of Phila.*, 2011 U.S. Dist. LEXIS 25387, 11 (2011).

**B. Supplementation Will Promote a Complete and Efficient Resolution of the Parties' Dispute.**

25. The proposed supplemental allegations concern alleged continuing and related sewage-disposal and stormwater conditions at the Facility.

26. Resolving the supplemental allegations in this action will allow the Court to address the related alleged conduct without requiring a separate lawsuit based on the same Facility, parties, and alleged discharge pathway.

27. Rule 15(d) promotes judicial economy and a complete adjudication of the dispute between the parties. *CMR D.N. Corp. v. City of Phila.*, 2011 U.S. Dist. LEXIS 25387, 11 (2011).

28. Courts applying Rule 15(d) consider whether supplementation will promote a just disposition of the case and whether it will cause delay, inconvenience, prejudice, or futility. *Millhouse v. United States*, 2019 U.S. Dist. LEXIS 191884, 5 (2019).

29. Allowing the proposed Supplemental Complaint will promote the efficient resolution of Plaintiffs' related allegations.

### C. The Proposed Supplement Will Not Cause Undue Prejudice or Undue Delay.

30. The proposed Supplemental Complaint identifies the Facility, the alleged sewage-disposal-system failure, the alleged rain-garden and culvert pathway, the chronology of alleged discharge events, and the alleged property impacts.

31. The proposed allegations also concern events at Defendants' Facility and alleged notice provided to Defendants or their representatives during the events at issue.

32. Defendants have already been served with a 60-day Notice of Intent to file the Supplemental Complaint on August 7, 2026.

33. Leave to supplement should generally be granted absent undue delay, bad faith, dilatory motive, undue prejudice, or futility. *Clearly Clean Prods., LLC v. Tekni-Plex, Inc.*, 2026 U.S. Dist. LEXIS 52545, 8 (2026).

34. Plaintiffs seek supplementation to present post-pleading events connected to the allegations in this action, not for purposes of delay or unfair surprise.

35. The requested leave will not impose undue prejudice on Defendants and should be granted on just terms.

## CONCLUSION AND PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court enter an Order:

1. Granting Plaintiffs leave under Federal Rule of Civil Procedure 15(d) to file the proposed Supplemental Complaint attached as Exhibit A;
2. Directing the Clerk of Court to file the proposed Supplemental Complaint on or after October 8, 2026, more than 60 days after the filing of the Notice of Intent was served;
3. Directing Defendants to answer or otherwise respond to the Supplemental Complaint within the time set by the Federal Rules of Civil Procedure or by further order of the Court; and

4. Granting such other relief as the Court deems just and proper.

Respectfully submitted,

Tim Fitchett
Fair Shake Environmental Legal Services
6425 Living Place
Pittsburgh, Pennsylvania, 15206
412-664-5546

Dated: 9/30/26

## Verification

I, Luke Brown, hereby certify that the statements in this Complaint are true and correct to the best of my knowledge, information and belief, subject to the penalties, including criminal penalties, under 18 Pa. C.S.A. 4904, relating to unsworn falsification to authorities.

30/09/2026

Date

Luke Brown (Sep 30, 2026 14:13:46 EDT)

Luke Brown

I, Dana Brown, hereby certify that the statements in this Complaint are true and correct to the best of my knowledge, information and belief, subject to the penalties, including criminal penalties, under 18 Pa. C.S.A. 4904, relating to unsworn falsification to authorities.

30/09/2026

Date

Dana Brown (Sep 30, 2026 14:15:29 EDT)

Dana Brown

## CERTIFICATE OF SERVICE

I certify that on September 30, 2026, I served a true and correct copy of the foregoing Plaintiffs' Motion for Leave to File Supplemental Pleading, its supporting materials, and the proposed order upon the following by PACFILE:

Erin Lucas Hamilton, Esq.
ehamilton@babstcalland.com
Mackenzie Moyer, Esq.
mmoyer@babstcalland.com

Babst, Calland, Clements and Zomnir, P.C.
Two Gateway Center
603 Stanwix St., Floor 6
Pittsburgh, PA 15222
Tel: (412) 394-5400
Fax: (412)394-6576

Tim Fitchett
Fair Shake Environmental Legal Services

**EXHIBIT A**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| LUKE and DANA BROWN, Plaintiffs, | ::::: ::::: | |
| vs. | | Civil Action No. 26-cv-1148 |
| ALIMENTATION COUCHE-TARD and GIANT EAGLE, INC., Defendants. | | |

**SUPPLEMENTAL COMPLAINT**

NOW COMES, Luke and Dana Brown, Plaintiffs, by and through their counsel, Fair Shake Environmental Legal Services, and bring this Supplemental Complaint in Civil Action. Plaintiffs allege that Alimentation Couche-Tard and Giant Eagle, Inc., Defendants, have intentionally and unreasonably interfered with Plaintiffs' use and enjoyment of their property by creating a private nuisance through poor management of their on-site septic system, causing sewage to flood onto Plaintiffs' property. Defendants have negligently managed operations at its site, causing water and sewage trespass that has thereby negatively impacted Plaintiffs' quality of life and quiet enjoyment of their property. Finally, Defendants

have failed to comply with the Clean Streams Act and the Clean Water Act, violating both state and federal law.

## INTRODUCTION

1. Plaintiffs incorporate by reference the allegations of their First Amended Complaint filed on June 19, 2026, except to the extent expressly supplemented below.

2. This Supplemental Complaint adds facts concerning sewage discharges originating from the GetGo facility located at 663 New Castle Road, Butler, Pennsylvania 16001.

3. Except as expressly supplemented, Plaintiffs preserve the allegations, claims, and requested relief stated in the original pleading.

## PARTIES

4. Plaintiffs Luke Brown and Dana Brown are husband and wife and reside at 112 Eagle Mill Road, Butler, Pennsylvania 16001, immediately adjacent to the Facility.

5. Defendant Giant Eagle Inc. is a Pennsylvania company with a principal address at 700 Cranberry Woods Drive, Cranberry Township, Pennsylvania 16066.

6. Giant Eagle purchased the Facility site, constructed the Facility, and operated it until transferring ownership in or around June 2025.

7. Defendant Alimentation Couche-Tard ("ACT") acquired the GetGo stations, including the Facility, in or around June 2025 and thereafter owned and operated the Facility.

8. The Facility is located in Franklin Township, Butler County, Pennsylvania.

9. The Facility's discharges travel through surface-flow pathways and a culvert system beneath Eagle Mill Road toward Plaintiffs' property.

## VENUE, JURISDICTION, AND STANDING

10. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C.S. § 1331 because Plaintiffs assert claims arising under the Clean Water Act, 33 U.S.C.S. § 1251 et seq., including its citizen-suit provision, 33 U.S.C.S. § 1365.

11. This Court has supplemental jurisdiction over Plaintiffs' related state-law claims pursuant to 28 U.S.C.S. § 1367 because those claims form part of the same case or controversy as Plaintiffs' federal Clean Water Act claims.

12. This Court has personal jurisdiction over Defendants because Defendants conduct business in Pennsylvania, own or operate the site at issue in Butler County, Pennsylvania, and the conduct giving rise to Plaintiffs' claims occurred in this District.

13. Venue is proper in the United States District Court for the Western District of Pennsylvania pursuant to 28 U.S.C. § 1391(b) because a substantial part of the

events or omissions giving rise to Plaintiffs' claims occurred in Butler County, Pennsylvania, within this judicial district, and the property at issue is located in this District.

## FACTUAL BACKGROUND

14. The Facility uses an on-site sewage-disposal system that includes septic tanks, a dosing system, and a sand mound absorption area.

15. On June 24, 2026, at approximately 5:15 p.m., an inspection pipe on the sand mound was intact and in place.

16. By approximately 7:35 p.m. that day, the inspection pipe was down on the hillside, effluent had pumped from the system, and the surrounding ground was wet from the discharge.

17. Plaintiffs believe that the pipe had become disconnected from the lateral, allowing septic effluent to be pumped onto the surface of the sand mound instead of being treated and disposed of through the absorption area.

18. Sewage pooled in the rain garden and produced strong and offensive odors that entered Plaintiffs' home even with all windows and doors shut.

19. When rainfall filled the rain garden, the sewage commingled with stormwater and discharged through the drainage system toward and onto Plaintiffs' property.

20. On June 25, 2026, rainfall filled the rain garden with stormwater mixed with sewage, and a sewage odor was present.

21. On June 27, 2026, rainfall caused the rain garden to discharge stormwater and sewage onto Plaintiffs' property.

22. By June 29, 2026, representatives and contractors associated with the Facility had been notified of the septic-system failure, but the condition had not been repaired.

23. From July 3 through July 6, 2026, rainfall caused additional discharges of stormwater and sewage, accompanied by a severe sewage odor in Plaintiffs' backyard.

24. On July 8, 2026, a representative attempted to place the disconnected pipe back into its opening, but the pipe was left leaning and the problem remained unresolved.

25. On July 9, 2026, at an informal hearing with Defendants and the Pennsylvania Department of Environmental Protection related to the approval of Defendants' discharge permits, Plaintiffs told Defendants explicitly about the sewage issues.

26. On July 10, 2026, sewage backed up into the Facility. Plumbers cleared a clog and the septic tanks were pumped, but the sand mound was not inspected as part of that work.

27. On July 10, 2026, Plaintiffs witnessed liquid flowing from the back of the store into the parking lot, which they believe had been raw sewage.

28. Rainfall on July 10, 2026, again filled the rain garden with stormwater and sewage, and sewage odor was present inside the catch basin near the road.

29. On July 11, 2026, Plaintiffs observed the septic system pumping at approximately 8:00 a.m.

30. On July 12, 2026, Plaintiffs observed the system dosing approximately every two hours and twelve to thirty-nine minutes. In each of these instances Plaintiffs observed sewage pumping from the broken inspection pipe for approximately 7 minutes 25 seconds. The rain garden contained sewage, emitted an unbearable odor, and showed algae growth.

31. On July 15, 2026, the rain garden remained filled with sewage and continued to emit a severe odor.

32. On July 20, 2026, the sewage odor was comparable to the odor of decomposing organic matter.

33. On July 21, 2026, rainfall caused another discharge of stormwater and sewage from the rain garden.

34. On July 28, 2026, Franklin Township Sewage Enforcement Officer David Ice returned to the Facility and observed that the condition had not been repaired.

35. As of August 3, 2026, the pipe and mound remained unrepaired, sewage odors continued at irregular intervals, and the path traveled by the sewage remained visible.

36. On August 4, 2026, a maintenance worker attempted to repair the system but was unable to seat the pipe properly in the lateral pipe.

37. On August 5, 2026, Fazio Mechanical Services reattached the pipe on the sand mound.

38. Sewage discharges occurred from June 24 through at least August 5, 2026, and may have continued thereafter.

39. On information and belief, the discharged sewage included organic matter, nutrients, pathogens, solids, chemicals, paper, and other materials associated with commercial wastewater.

40. Despite notice of the failure and multiple visits by representatives and contractors, the system was not successfully reconnected until August 5, 2026.

41. Plaintiffs experienced persistent sewage odors throughout their yard, near the culvert-discharge area, and throughout their home, that at times were unbearable and caused gagging, nausea and headaches.

42. The sewage conditions interfered with Plaintiffs' use and enjoyment of their entire property, including areas used for flower beds, a recreational fire pit, a walking trail, a barn, and a dog run.

43. Upon information and belief, the soil at the rain garden, as of the filing of this supplement, has still not been remediated of the sewage contamination.

## SUPPLEMENTATION OF EXISTING CLAIMS

44. The preceding allegations supplement Plaintiffs' existing claims for private nuisance, negligence, water trespass, and violations of the Clean Water Act and Clean Streams Law.

45. The sewage events described above arose from the operation, maintenance, repair, and management of the Facility and its drainage and sewage-disposal systems.

## COUNT 1 – Private Nuisance

46. Plaintiffs reallege and incorporate by reference herein all above allegations and all aforementioned exhibits.

47. Defendants, and their agents, servants, employees, and contractors, have intentionally and unreasonably interfered with Plaintiffs' use and enjoyment of their property through their failure to properly maintain and repair their sewage facilities and failure to implement stormwater management controls.

48. Plaintiffs are no longer able to quietly enjoy their home and property.

49. The flooding caused by Defendants' poor sewage and stormwater management resulted in Plaintiffs no longer being able to use most of their backyard and being exposed to raw sewage discharge.

50. Defendants' actions have substantially harmed Plaintiffs by significantly and adversely affecting their quality of life and use and enjoyment of property in a rural setting.

51. Section 402 of the Clean Streams Law (35 P.S. § 691.402) states that when the Department finds that some activity creates a danger of pollution of the waters of the Commonwealth, the Department may require that such activity be conducted only pursuant to a permit issued by the department.

52. Specifically, 35 P.S. § 691.402(b) states that whenever a permit is required, it shall be unlawful for a person to conduct the activity regulated except pursuant to a permit issued by the department, and that conducting such activity without a permit, or contrary to the terms or conditions of a permit or contrary to the rules and regulations of the department, is hereby declared to be a nuisance.

53. 32 P.S. § 680.15, part of Pennsylvania's Storm Water Management Act, states that: "Any activity conducted in violation of the provisions of this act or of any watershed storm water plan, regulations or ordinances adopted hereunder, is hereby declared a public nuisance."

54. Defendants have violated Pennsylvania's Storm Water Management Act, 32 P.S. §§ 680.1-680.17, see Count 6 below.

55. Section 1203 of the Franklin Township Stormwater Management Ordinance states that "A violation of any provision of this Ordinance is hereby deemed a

Public Nuisance" and that "each day that a violation continues shall constitute a separate violation."

56. Defendants have violated the Franklin Township Stormwater Management Ordinance, see Count 6 below.

57. Plaintiffs have suffered a special injury in that their property, more than any member of the general public, is specifically harmed by Defendants' conduct.

58. Under Pennsylvania law, Plaintiffs are entitled to recover for restoration damages for property damaged or destroyed by nuisance.

59. Under Pennsylvania law, Plaintiffs are entitled to recover damages for annoyance and discomfort caused by Defendants' nuisance.

60. Under Pennsylvania law, Plaintiffs are entitled to recover punitive damages for nuisance.

**COUNT 2 – Water Trespass**

61. Plaintiffs reallege and incorporate by reference herein all above allegations and all aforementioned exhibits.

62. Upon information and belief, Defendants have caused the sewage discharge onto Plaintiffs' property through improper maintenance and repair of their septic mound.

63. Defendants' other alleged failings relating to stormwater have caused sewage-laden stormwater runoff to enter onto Plaintiffs' property causing loss of use of Plaintiffs' property and exposure to raw sewage.

64. Under Pennsylvania law, Plaintiffs are entitled to recover restoration damages for property destroyed by trespass.

65. Under Pennsylvania law, Plaintiffs are entitled to recover damages for annoyance, inconvenience, and discomfort caused by Defendants' unreasonable trespass.

66. Under Pennsylvania law, Plaintiffs are entitled to recover punitive damages for trespass.

**COUNT 3 – Negligence**

67. Plaintiffs reallege and incorporate by reference herein all above allegations and all aforementioned exhibits.

68. Defendants, and their agents, servants, employees, and contractors, had a duty to ensure that their operations did not cause harm to Plaintiffs and their property, and did not interfere with Plaintiffs' quiet enjoyment of their home.

69. Defendants, and their agents, servants, employees, and contractors have failed to conform to the required standard of conduct.

70. Defendants, and their agents, servants, employees, and contractors have breached that duty by allowing sewage-laden water to travel onto the Plaintiffs'

property by failing to properly maintain and repair their septic system, which exacerbated the problems with their improperly engineered Post-Construction Stormwater Management plan ("PCSM") in violation of their National Pollutant Discharge Elimination System ("NPDES") permit.

71. This failure to maintain and repair their septic system caused multiple instances of sewage-laden runoff entering onto Plaintiffs' property.

72. As a result of this repeated, severe intrusion, the Plaintiffs were unable to use their backyard.

73. Defendants' negligence consisted of the following:

    i. Failing to properly implement the PCSM as submitted by Defendant Giant Eagle for an NPDES general permit;

    ii. Failing to take such precautions as were reasonably necessary to prevent flooding from the culvert;

    iii. Failing to prevent pollution to waters of the Commonwealth;

    iv. Failing to maintain and repair the septic system, despite knowledge that the system was broken;

    v. Allowing raw sewage effluent to run into the stormwater management system and not remediating said sewage contamination, despite constructive knowledge that the stormwater management system was flooding onto Plaintiffs' property; and

vi. Failing to either close down the facility's bathrooms/kitchen or repair the broken system for over one month.

74. As a natural and proximate cause of Defendants' negligence, Plaintiffs have suffered damage including but not limited to:

i. Loss of use of property due to repeated, severe flooding of raw sewage into their yard.

75. As a result, Plaintiffs have suffered actual damages.

**COUNT 4 –Violations of Clean Streams Law**

76. Plaintiffs reallege and incorporate by reference herein all above allegations and all aforementioned exhibits.

77. Section 402 of the Clean Streams Law (35 P.S. § 691.402) states that when the Department finds that some activity creates a danger of pollution of the waters of the Commonwealth, the Department may require that such activity be conducted only pursuant to a permit issued by the department.

78. Specifically, 35 P.S. § 691.402(b) states that whenever a permit is required, it shall be unlawful for a person to conduct the activity regulated except pursuant to a permit issued by the Department, and that conducting such activity without a permit, or contrary to the terms or conditions of a permit or contrary to the rules and regulations of the department, is hereby declared to be a nuisance.

79. Defendants are required to have an approved post-construction stormwater management plan.

80. Due to Defendants' failure to construct a stormwater management system that complied with the approved plan in the original permit application, and DEP's subsequent denial of Defendants' Major Amendment, Defendants are in violation of Section 402 of the Clean Streams Law.

81. Section 611 of the Clean Streams Law (35 P.S. § 691.611) states that it shall be unlawful to fail to comply with any rule or regulation of the Department or to fail to comply with any order or permit or license of the Department, and that any person engaging in such conduct shall be subject to the provisions of sections 601, 602, and 605 of the Law, which require abatement of nuisances, impose fines for violations of the Law, and impose civil penalties for violations, respectively.

82. Defendants' failure to construct an approved stormwater management system constitutes a failure to comply with a permit issued by the Department under Section 611, and thus subjects Defendants to the penalties outlined in Sections 601, 602, and 605 of the Clean Streams Law.

83. Defendants allowing raw sewage to exit their septic mound and enter into the stormwater management system is a further breach of their permit and constitutes an unregulated discharge.

84. Defendants have violated the Clean Streams Law every day that they allowed raw sewage to enter the Stormwater Management System. This includes at least 43 days, calculated from the first date of observed flooding on the property, June 24, 2026 through the eventual repair on August 5, 2026.

85. The Clean Streams Law provides a fine up to $10,000 per day for 43 days, subjecting Defendants to up to $430,000 in fines.

**COUNT 5 –Violations of Clean Water Act**

86. Plaintiffs reallege and incorporate by reference herein all above allegations and all aforementioned exhibits.

87. Section 404 of the Clean Water Act requires compliance with all NPDES permits; thus, violations at the site under Count 4 also constitute a violation of the Clean Water Act.

88. Defendants have violated the Clean Water Act every day that it allowed raw sewage to enter the Stormwater Management System. This includes at least 43 days, calculated from the first date of observed flooding on the property, June 24, 2026 through the eventual repair on August 5, 2026.

89. The Clean Water Act provides a fine up to $68,445 per day, subjecting Defendants to up to $2,943,135 in fines.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

1. Award Plaintiffs $600,000.00 in actual and punitive damages from Defendants;
2. Award Plaintiffs costs and attorney fees in connection with this action;
3. Award $2,943,135 in civil penalties under the CWA payable to the U.S. Treasury;
4. Award $430,000 in civil penalties under the CSL to the Pennsylvania State Treasury; and
5. Award any other equitable relief deemed appropriate by the Court.

Respectfully submitted,

Tim Fitchett
Fair Shake Environmental Legal Services
6425 Living Place
Pittsburgh, Pennsylvania, 15206
412-664-5546

Dated: 10/8/2026

## Verification

I, Luke Brown, hereby certify that the statements in this Complaint are true and correct to the best of my knowledge, information and belief, subject to the penalties, including criminal penalties, under 18 Pa. C.S.A. 4904, relating to unsworn falsification to authorities.

30/09/2026

Luke Brown (Sep 30, 2026 14:13:46 EDT)

Date

Luke Brown

I, Dana Brown, hereby certify that the statements in this Complaint are true and correct to the best of my knowledge, information and belief, subject to the penalties, including criminal penalties, under 18 Pa. C.S.A. 4904, relating to unsworn falsification to authorities.

30/09/2026

Dana Brown (Sep 30, 2026 14:15:29 EDT)

Date

Dana Brown

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| LUKE and DANA BROWN, | : | |
| Plaintiffs, | : | |
| vs. | : | |
| | : | Civil Action No. 26-cv-1148 |
| ALIMENTATION COUCHE-TARD | : | |
| and GIANT EAGLE, INC., | : | |
| Defendants. | : | |
| | : | |
| | : | |

**ORDER**

AND NOW, this ___ day of ____________, 2026, upon consideration of Plaintiffs' Motion for Leave to File Supplemental Complaint Under Federal Rule of Civil Procedure 15(d), it is hereby ORDERED that the Motion is GRANTED. Plaintiffs' proposed Supplemental Complaint, attached to the Motion as Exhibit A, is deemed filed as of October 8, 2026.

Defendants shall answer or otherwise respond to the Supplemental Complaint by October 29, 2026.

**BY THE COURT:**

______________________________

**United States District Judge**

# 9.30.26.Supplemental Complaint

Final Audit Report 2026-09-30

| | |
|---|---|
| Created: | 2026-09-30 |
| By: | Erin Brind'Amour (ebrindamour@fairshake-els.org) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAMTeKQ9utLzeP5ynMOhHu4UlqSw_pvE-E |

## "9.30.26.Supplemental Complaint" History

Document created by Erin Brind'Amour (ebrindamour@fairshake-els.org)
2026-09-30 - 6:09:44 PM GMT

Document emailed to Dana Brown (danab1984@zoominternet.net) for signature
2026-09-30 - 6:09:50 PM GMT

Document emailed to Luke Brown (danab1984@zoominternet.net) for signature
2026-09-30 - 6:09:50 PM GMT

Email viewed by Dana Brown (danab1984@zoominternet.net)
2026-09-30 - 6:11:13 PM GMT

Email viewed by Luke Brown (danab1984@zoominternet.net)
2026-09-30 - 6:11:53 PM GMT

Document e-signed by Luke Brown (danab1984@zoominternet.net)
Signature Date: 2026-09-30 - 6:13:46 PM GMT - Time Source: server - Signature Appearance Selected: DRAW

Document e-signed by Dana Brown (danab1984@zoominternet.net)
Signature Date: 2026-09-30 - 6:15:29 PM GMT - Time Source: server - Signature Appearance Selected: DRAW

Agreement completed.
2026-09-30 - 6:15:29 PM GMT